1
2
3
4
5
6
7
8

9           **IN THE UNITED STATES DISTRICT COURT**

10           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12  PAMELA LIAL,                   CASE NO. CV F 09-1039 LJO JLT

13             Plaintiff,       **SUMMARY JUDGMENT DECISION**
        vs.                   (Doc. 24.)

14

15  COUNTY OF STANISLAUS, et al.,

16            Defendants.
   _____/

17                   **INTRODUCTION**

18       Defendants County of Stanislaus ("County") and its management employee Tod Woodward

19  ("Mr. Woodward") seek summary judgment in the absence of evidence "to establish" pro se plaintiff

20  Pamela Lial's ("Ms. Lial's") employment harassment, discrimination and retaliation claims.  Ms. Lial

21  filed no papers to oppose summary judgment timely.  This Court considered the County and Mr.

22  Woodward's (collectively "defendants'") summary judgment motion on the record[1] and VACATES the

23  December 6, 2010 hearing, pursuant to Local Rule 230(c), (g).  For the reasons discussed below, this

24  Court GRANTS defendants summary judgment.

25  _____

26       [1]       In the absence of Ms. Lial's timely opposition, this Court carefully reviewed and considered the entire
record to determine whether defendants' summary judgment motion is well supported.  Omission of reference to an argument,
27  document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper.  This
Court thoroughly reviewed, considered and applied the evidence and matters it deemed admissible, material and appropriate
28  for summary judgment.

1

**BACKGROUND**

2

**Ms. Lial's Hiring**

3      The County hired Ms. Lial in 1999, and in 2001, she transferred to the County's Code

4  Enforcement Unit and became a Zoning Enforcement Officer in the current Department of

5  Environmental Resources ("DER").

6

**Relationship With Michael Newton**

7      Ms. Lial has been involved in romantic relationships with two co-workers in the Code

8  Enforcement Unit. In summer 2001, Ms. Lial began a romantic relationship with Michael Newton ("Mr.

9  Newton"), another Zoning Enforcement Officer.  In fall 2001, Mr. Newton was promoted to Code

10  Enforcement Manager and became Ms. Lial's supervisor. Ms. Newton's romantic relationship with Mr.

11  Newton ended after about a year in summer 2002.

12      In 2007, Ms. Lial learned that Mr. Newton had started an "internal investigation" into (using Ms.

13  Lial's words) Ms. Lial's "looking at inappropriate sites on my computer," "work performance issues,"

14  and "billing regarding weed-and-seed projects."  Ms. Lial believed that Mr. Newton "was going to start

15  to try and fire me."

16      On May 30, 2007, Ms. Lial complained to DER Equal Rights Officer Merry Rorabaugh ("Ms.

17  Rorabaugh") that Mr. Newton retaliated against her for their failed relationship and for problems in his

18  marriage caused by Ms. Lial.  Ms. Lial accused Mr. Newton of humiliating her "in front of others."

19      The County hired an outside investigator to address Ms. Lial's accusations against Mr. Newton.

20  The investigation did not substantiate Ms. Lial's claims that Mr. Newton harassed her.  Nonetheless, the

21  County terminated Mr. Newton in July 2007 for other reasons.  After Mr. Newton's termination, Ms.

22  Lial dropped her complaints about him.

23

**Relationship With Mr. Woodward**

24      In September 2005, the County hired Mr. Woodward as a Zoning Enforcement Officer.  In

25  October 2005, Ms. Lial and Mr. Woodward began a romantic relationship which ended a year later in

26  October 2006.

27      On October 29, 2007, Mr. Woodward was promoted to Code Enforcement Manager and became

28  Ms. Lial's supervisor. Mr. Woodward implemented procedures which he expected Zoning Enforcement

2

Officers to follow and met with the Zoning Enforcement Officers to discuss the procedures and provide them a written copy.  In her deposition, Ms. Lial testified that some "procedures were warranted" and were "welcome changes" but others were not "necessary."  Ms. Lial describes Mr. Woodward's management style as less "laid back" than previous managers in that "prior to Mr. Woodward becoming manager, there was no management and that when he became manager, it was extreme micromanagement."  Ms. Lial claims that other Code Enforcement Officers, male and female, had problems with Mr. Woodward's procedures but acknowledges that the procedures were within Mr. Woodward's managerial discretion.

After meeting with Ms. Lial, Mr. Woodward prepared a November 28, 2007 memo regarding "Insubordination, and Rude, Disrespectful Behavior" to address several occasions of Ms. Lial raising her voice "in defiance" to elicit cautions to lower her voice.  The memo concluded that Ms. Lial's "behavior is inappropriate and unacceptable," that her "attitude is condescending," and that she is "argumentative to the point of insubordination."

On December 3, 2007, Ms. Rorabaugh met with Ms. Lial to discuss Ms. Lial's claims that Mr. Woodward harassed Ms. Lial.  Ms. Rorabaugh provided her meeting notes to Ms. Lial so, as Ms. Rorabaugh stated in her declaration, "she could notify me of any discrepancies or add to her complaint. Ms. Lial informed me that my notes were correct and, accordingly, I began an investigation."  Ms. Rorabaugh's investigation revealed no "evidence of harassment that violated the County's Harassment Policy."  Ms. Rorabaugh's January 7, 2008 memo to Ms. Lial explained that Ms. Lial's "allegation of harassment appears unfounded based on our investigation."  The memo notified Ms. Lial of her right to appeal the findings, but Ms. Lial did not appeal the findings.

During January-April 2008, Ms. Lial made additional complaints against Mr. Woodward.  Ms. Lial's January 16, 2008 email to Ms. Rorabaugh complained that Mr. Woodward required a "Confidential Assistant" to attend his meetings with Ms. Lial but not meetings with her "colleagues" to single out Ms. Lial.  Ms. Rorabaugh's January 16, 2008 email responded to Ms. Lial that "we plan to continue the practice of having a confidential assistant in meetings between you and Tod.  Based on your complaint of harassment, we feel it is better to take this proactive step."

In March 2008, Ms. Lial complained to Ms. Rorabaugh about a coworker training Ms. Lial.  On

1  March 18, 2008, Ms. Rorabaugh discussed with Ms. Lial work related issues, including those Ms. Lial

2  had with Mr. Woodward.  Ms. Rorabaugh declares that she "investigated Ms. Lial's concerns and found

3  them to be unsubstantiated."

4        On April 15, 2008, Ms. Lial complained to Ms. Rorabaugh about Mr. Woodward's demeaning

5  treatment of Ms. Lial by his attitude and demeanor.  Ms. Rorabaugh investigated Ms. Lial's complaints

6  and "did not find evidence to substantiate her complaints."  Ms. Rorabaugh's April 17, 2008 memo to

7  Ms. Lial regarding Ms. Rorabaugh's findings concluded: "Please be aware that should you continue to

8  make unfounded allegations, we may take corrective action, which could include disciplinary action."

9        The County notes Ms. Rorabaugh investigated four of Ms. Lial's complaints and that an outside

10  investigator addressed another of her complaints through which none of Ms. Lial's allegations were

11  substantiated.  Ms. Lial did not appeal the investigations' findings.  Ms. Lial acknowledges that she has

12  "no idea what steps" Ms. Rorabaugh took for her investigations and "can't even begin to guess what she

13  should have done."

14  **Discipline Of Ms. Lial**

15        Since 2005, Ms. Lial has received multiple counselings, a letter of reprimand and two

16  suspensions along with counseling and discipline from five supervisors.

17        As Ms. Lial's supervisor, Mr. Newton expressed what Ms. Lial concedes as legitimate concerns

18  regarding her performance, for instance, "not closing out a file properly" and "time frames in responding

19  to individuals."  Mr. Newton's June 6, 2005 memo to Ms. Lial addressed delays to clean up a property.

20  Mr. Newton's April 10, 2006 memo to Ms. Lial criticized her delay to complete tasks and her

21  disorganization.  The memo noted that "placing blame on others when you've missed deadlines and/or

22  failing to take action commensurate with your position is unacceptable and cannot continue."  The memo

23  further noted "complaints from other staff that you have a 'disruptive attitude and at times you try to

24  undermine my authority.'"

25        After Mr. Newton's termination, Denise Wood ("Ms. Wood"), Environmental Health Unit

26  Manager, supervised DER.  During her three-month supervision of Ms. Lial, Ms. Wood expressed orally

27  and in writing concerns about Ms. Lial's performance.  Ms. Wood orally noted that Ms. Lial was not

28  "diligent enough" to contact a property owner regarding a surfacing sewage complaint and that Ms. Lial

failed to take sufficient photos of a property.

Ms. Wood's October 11, 2007 memo to Ms. Lial addressed "continued concerns" with inaccurate weed and seed billing, internet usage to interfere with Ms. Lial's "production," and failure to complete tasks and process cases timely and properly.

Mr. Woodward's February 12, 2008 memo to Ms. Lial followed up their January 30, 2008 meeting and criticized Ms. Lial's "delays in working the cases assigned to you," the disproportionate amount of time Ms. Lial spends in the office compared to the field, and her "time management."  The memo further addressed Ms. Lial's "unacceptable attitude":

> You are abrupt, harsh and rude during unit meetings, and hostile, argumentative, and disrespectful when speaking to me.  Your resistence is evidenced by your unwillingness to follow simple instructions and your constant questioning of direction that you have been given.
>
> . . . it is inappropriate to be rude, hostile and continue to be argumentative about the direction that you have received.  This behavior must stop immediately.
>
> . . . you must work on improving in the areas you are deficient, which include the inability to accept criticism, your defensiveness when asked questions regarding your cases, your impatience with authority, improving time management and improving follow through when working your cases.

The memo noted that Mr. Woodward scheduled "a follow-up review of cases, in approximately four weeks."

On March 18, 2008, Mr. Woodward met with Ms. Lial, using the words of his declaration, "to reassess her time management and efficiency, and to follow-up our January 30, 2008 meeting.  I had discovered that Ms. Lial had not worked on multiple files and delayed working on others.  I did not see improvement in her time management and efficiency."  Mr. Woodward's March 18, 2008 memo to Ms. Lial addressed "major concerns" of "case management" and "organization" and re-emphasized concerns with "file preparation, research, time management, and attitude expectations."  Mr. Woodward directed Ms. Lial to "mandatory" training with coworker Robert Miramontes ("Mr. Miramontes"), using the memo's words, "to help you define your cases, establish a daily routine and provide time management strategies."

Mr. Woodward issued to Ms. Lial a March 20, 2008 letter of reprimand for "inefficiency; inexcusable neglect of duties; dishonesty" regarding February 14 and 27, 2008 incidents.  The letter

1  concluded:

> Your failure to adhere to procedures and expectations set forth regarding code
> enforcement complaints, calls into question my confidence in you in your current
> position. Immediate and marked improvement must be made or more severe disciplinary
> action including suspension, demotion or discharge may be taken.

The County issued Ms. Lial a July 16, 2008 order for a 40-hour suspension for, among other things, her "incomplete work on cases" and "delays in working files." The order noted that Ms. Lial's "actions, or lack of actions, has placed additional work on other employees" and failure to follow procedures and complete work to constitute "inefficiency, and inexcusable neglect of duty." The order notified Ms. Lial of her right to appeal. Ms. Lial waived an appeal of her suspension in exchange for a reduced suspension to 40 hours from 15 days. Ms. Lial acknowledges that "[t]here might be some truth to the allegations" of the July 16, 2008 order but claims she was "treated differently" than colleagues.

The County issued Ms. Lial a November 5, 2008 order for a 30-day suspension for "incompetence; inefficiency; inexcusable neglect of duties; insubordination; dishonesty; willful disobedience; and violation of Department rules" for incidents of "failure to properly research the property zoning," "giving of inaccurate information to the property owners," issuing citations with wrong code violations, entering property without consent or a warrant to constitute Fourth Amendment violations, and failure "to follow written orders."

On April 8 and 9, 2010, the County's Employee Disciplinary Proceedings Hearing Board ("hearing board") conducted an evidentiary hearing on Ms. Lial's 30-day suspension. During the hearing, Ms. Lial argued that her suspension was discriminatory and in retaliation for ending her romantic relationship with Mr. Woodward. The three-person hearing board unanimously upheld the suspension. Ms. Lial did not further challenge the suspension.

In September 2009, DER Assistant Director Rowe Barney ("Mr. Barney") investigated a case Ms. Lial handled involving animals on a property. Mr. Barney's October 6, 2009 memo to Ms. Lial notes Ms. Lial's failure to:

1.    "[P]roperly research the parcel size prior to your inspection of the parcel and prior to talking with the property owner regarding the small livestock farming operation";

6

2.   "[F]ollow up with the property owners/animal owners when information was brought forward that was relevant to their situation"; and

3.   Prepare notes to "contain all of the relevant facts of the case" and to "accurately reflect your actions in the case."

Mr. Woodward's June 17, 2010 memo to Ms. Lial addressed her failure to list in her notes where she was positioned during a property inspection to ensure no Fourth Amendment violation.

In September 2010, Ms. Lial was reassigned from DER's Code Enforcement Unit to DER's Solid Waste Division and began to report to Vicki Jones.  County Director of Departments of Environmental Resources and Parks and Recreation Sonya Harrigfeld ("Ms. Harrigfeld") declares that she made the decision to reassign a Zoning Enforcement Officer to the Solid Waste Division and authorized an offer to Ms. Lial for the reassignment which Ms. Lial accepted.  Ms. Lial testified that another County employee was reassigned and that she lacks evidence that Mr. Woodward was responsible for her reassignment.

**Ms. Lial's Stress Leave**

On December 24, 2008, when serving her 30-day suspension, Ms. Lial sent Ms. Rorabaugh an email to indicate that Ms. Lial had a doctor's note to take her off work.  Ms. Lial submitted to Ms. Rorabaugh Debra Jane Cheang, M.D.'s ("Dr. Cheang's"), December 22, 2008 note that "Ms. Lial is being taken off work for 1 month starting December 29, 2008.  Expected to return to work: January 26, 2009."  The County permitted the leave.

The County did not hear from Ms. Lial until receipt of Ms. Lial's January 23, 2009 letter to request "a reasonable accommodation" and engagement "in the interactive process" to "work through" issues, including:

1.   "[T]he extreme amount of stress I have been under while under the direct supervision of Tod Woodward" with health suffering "tremendously in the last year";

2.   "[E]xacerbated problems with Achalasia, Diabetes and cholesterol"; and

3.   Extreme difficulty "to perform my normal job duties" due to "medical problems, the lack of sleep, and the constant stress created by Tod Woodward's supervision and harassment/retaliation."

7

The County notes that the letter failed to specify a requested accommodation, Ms. Lial's medical condition, or claimed limitations. Ms. Lial admits in her response to the County's request for admission that she did not notify the County of her alleged disability until her January 23, 2009 letter to request an accommodation.

Ms. Rorabaugh's February 5, 2009 letter responded that the County could not engage in the interactive process in absence of "medical documentation" to evaluate Ms. Lial's request and, to that end, requested "medical documentation in regards to specific accommodations . . . to perform the essential functions of your job." The letter enclosed the zoning enforcement officer job description and task analysis for Ms. Lial's physician to provide "medical documentation of necessary accommodations."

Dr. Cheang released Ms. Lial to return to work on March 11, 2009 "with reasonable accommodation not to work under direct supervision of her manager." The note identified neither a disability, Ms. Lial's restrictions, nor essential functions which she could not perform. Ms. Rorabaugh's March 16, 2009 letter to Ms. Lial denied an accommodation to work under a different supervisor and requested "a new note with clarification of your prognosis. The note must specify what date you will be released to return to work, with what accommodations, and when or if the restrictions will be lifted."

Ms. Rorabaugh's March 20, 2009 email to Ms. Lial permitted Ms. Lial to return to work under Mr. Woodward's supervision and reiterated the need for "a doctor's note as soon as possible, that gives us any restrictions and your prognosis . . . meaning how long the restrictions are for and an estimated time when/if you will be back to full duty." Ms. Lial responded with a March 26, 2009 email that she was "switching doctors," had an April 3, 2009 appointment, and requested "to begin the interactive process in regards to reasonable accommodation and/or a transfer out of this department prior to seeing another doctor." Ms. Rorabaugh's March 30, 2009 email responded that "we are unable to engage in the interactive process" in absence of a doctor's note to "specify what modification of work is necessary, for what time period, and your prognosis or when your are expected to be released to return to work full duty with no restrictions."

On April 20, 2009, Ms. Lial provided Ms. Rorabaugh the April 15, 2009 note of Vin E. Neumeyer, M.D. ("Dr. Neumeyer"), that Ms. Lial "is suitable to return to work without accommodation

1   or restrictions.  Prognosis: fair."

2   **Ms. Lial's Allegations As To Mr. Woodward**[2]

3   *Harassment*

4   Prior to becoming Ms. Lial's supervisor, Mr. Woodward was her coworker during September

5   2006 to late October 2007.  Ms. Lial testified that during that time period, Mr. Woodward harassed her

6   by attempting to humiliate her in unit meetings, attempting to get her in trouble with her supervisor

7   "regarding cases that we . . . both had contact together on," and spreading rumors that she had made

8   degrading comments about other employees.  Ms. Lial testified that Mr. Woodward "was trying to get

9   everybody on his side and against me" but her evidence of spreading rumors was limited to hearsay from

10  others.  Ms. Lial further testified that harassment prior to Mr. Woodward becoming her supervisor

11  "wasn't that big of an issue" in that "we didn't have to have a whole lot of interaction."  Ms. Lial did

12  not complain about Mr. Woodward's conduct during October 2006 to late October 2007 because "there

13  was no need to bring it up" unless "it gets to a point where it's kind of really causing me some

14  problems."

15  After Mr. Woodward became Code Enforcement Manager and Ms. Lial's supervisor in late

16  October 2007, Mr. Lial claims he harassed her by:

17      1.      Criticizing constantly her performance;

18      2.      Reprimanding her several times;

19      3.      Suspending her twice without pay;

20      4.      Demeaning her in March 2008 by requiring her to be trained by coworker Mr.

21              Miramontes who has less seniority;

22      5.      Replacing her County car with a truck;[3]

23      6.      Instructing her to organize her desk;

24      7.      Denying her request to attend training;

25      8.      Denying two vacation requests over 2½ years; and

26  _____

27      [2]    Ms. Lial no longer pursues quid pro quo sexual harassment.

28      [3]    Ms. Lial acknowledges that all other Zoning Enforcement Officers drove trucks.

1    9.    Forcing her to take six minutes of vacation time when she was late.

2  Ms. Lial also claimed "a lot of minor, little, petty things, but it's constant little, petty things."

3    Ms. Lial attributes Mr. Woodward's harassment to her ending their romantic relationship.

4    Ms. Lial acknowledges that since her romantic relationship with Mr. Woodward ended, Mr.

5  Woodward neither has made unwarranted sexual advances nor engaged in unwarranted sexual conduct.

6                            ***Discrimination And Retaliation***

7    Defendants attribute Ms. Lial to claim that Mr. Woodward discriminated and retaliated against

8  Ms. Lial by:

9    1.    Criticizing constantly her work performance;

10    2.    Issuing her "several letters of reprimand";

11    3.    Issuing her two suspensions without pay;

12    4.    Requiring her to be trained by less senior Mr. Miramontes; and

13    5.    "[L]aunching two investigations against her.

14    Ms. Lial testified that Mr. Woodward's conduct supporting her harassment claims also support

15  her retaliation claims.  Ms. Lial further testified that Mr. Woodward "favors men in the unit over the

16  women" in that "he's over there kind of chatting, BS'ing with them.  He doesn't do that quite as

17  frequently with the women in the unit."  In her deposition, Ms. Lial could provide no further specifics

18  or reasons of Mr. Woodward's discrimination in favoring men over women.

19    Like Mr. Woodward's harassment, Ms. Lial attributes his retaliation to her ending their romantic

20  relationship.

21                      **Ms. Lial's Allegations As To The County**

22    Ms. Lial claims a stress disability but acknowledges that she lacks evidence that the County

23  discriminated against her because of stress.  Ms. Lial claims that the County took adverse employment

24  action because of her stress by denying her accommodation request and interfering with her ability to

25  get a code enforcement management position with the City of Manteca.  Ms. Lial acknowledges her lack

26  of evidence that the County interfered with her ability to obtain the City of Manteca position or whether

27  the City of Manteca and County communicated regarding Ms. Lial.

28  / / /

                                        10

**Ms. Lial's Administrative Charge**

On December 24, 2008, Ms. Dial filed with the California Department of Fair Employment and Housing ("DFEH") a complaint ("DFEH charge") against the County and Mr. Woodward to claim, as recent as October 9, 2008, harassment, retaliation, impermissible non-job related inquiry, failure to prevent discrimination or retaliation, denial of accommodation/transfer, and failure to engage in interactive process because of Ms. Lial's sex, marital status, disability, and retaliation for engaging in protected activity or requesting a protected leave or accommodation. The DFEH charge alleges:

> My employer and my supervisor are discriminating, harassing and retaliating against me for my prior complaints of discrimination, harassment and retaliation. The constant harassment has created a hostile work environment and I have not received support from human resources or my employer. My employer and supervisor have now disguised their discrimination, harassment, and retaliation in the form of criticizing my work performance in effort to terminate me for my complaints.

DFEH issued Ms. Lial a December 24, 2008 notice to permit her to proceed with a civil court action.

**Ms. Lial's Operative Complaint**

On June 12, 2009, Ms. Lial filed her complaint ("complaint") in this action to allege that:

1.  The County retaliated against Ms. Lial after she complained to Ms. Rorabaugh that Mr. Newton harassed and discriminated against Ms. Lial based on her sex;

2.  After Ms. Lial ended her romantic relationship with Mr. Woodward in October 2006, Mr. Woodward retaliated against Ms. Lial "by ignoring her and belittling her in front of others";

3.  After Mr. Woodward was promoted to Code Enforcement Manager, he "took his retaliation to another level" and "began to constantly criticize Ms. Lial's performance, issuing her several letters of reprimand and two suspensions without pay" and further "demeaned Ms. Lial in March 2008 before her coworkers by requiring her to be trained by a coworker with less seniority"; and

4.  The County denied Ms. Lial's January 2009 accommodation request and "failed to offer an alternative accommodation or engage her in the interactive process."

The complaint alleges claims, which will be discussed in greater detail below, for hostile work

environment, sexual harassment, sexual and disability discrimination, retaliation, and failure to prevent discrimination and harassment to violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900, et seq. The complaint seeks recovery for Ms. Lial's lost wages and benefits, medical expenses, emotional distress, and "physical symptoms as a result of this prolonged harassment, retaliation and adverse employment actions," and punitive damages.

## DISCUSSION

### Summary Judgment Standards

Defendants seeks summary judgment in the absence of evidence to "establish" Ms. Lial's claims.

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c)(2); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c)(2); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

1    S.Ct. 2505 (1986)

2         The evidence of the party opposing summary judgment is to be believed and all reasonable

3    inferences that may be drawn from the facts before the court must be drawn in favor of the opposing

4    party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The

5    inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

6    whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-

7    252, 106 S.Ct. 2505.

8         To carry its burden of production on summary judgment, a moving party "must either produce

9    evidence negating an essential element of the nonmoving party's claim or defense or show that the

10   nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of

11   persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

12   Cir. 2000); *see Soremekun v. Thirfty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to

13   prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case");

14   *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).  A

15   "complete failure of proof concerning an essential element of the nonmoving party's case necessarily

16   renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v.

17   Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

18        "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

19   court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech

20   Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.

21   Only disputes over facts that might affect the outcome of the suit under the governing law will properly

22   preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

23        "If a moving party fails to carry its initial burden of production, the nonmoving party has no

24   obligation to produce anything, even if the nonmoving party would have the ultimate burden of

25   persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

26   "If, however, a moving party carries its burden of production, the nonmoving party must produce

27   evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

28   at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

1   fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

2   *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548 ("Rule 56(c) mandates the entry of summary judgment,

3   after adequate time for discovery and upon motion, against a party who fails to make the showing

4   sufficient to establish the existence of an element essential to that party's case, and on which that party

5   will bear the burden of proof at trial.  In such a situation, there can be no 'genuine issue as to any

6   material fact,' since a complete failure of proof concerning an essential element of the nonmoving

7   party's case necessarily renders all other facts immaterial.")

8       F.R.Civ.P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts

9   showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should,

10   if appropriate, be entered against that party."  "In the absence of specific facts, as opposed to allegations,

11   showing the existence of a genuine issue for trial, a properly supported summary judgment motion will

12   be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).  When

13   a summary judgment motion is unopposed, a court must "determine whether summary judgment is

14   appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter

15   of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990).  A court

16   "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather

17   must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d

18   1099, 1101 (11th Cir. 2004).  A court "need not sua sponte review all of the evidentiary materials on file

19   at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary

20   materials." *One Piece of Real Property*, 363 F.3d at 1101.

21       As discussed below, defendants are entitled to summary judgment in the absence of necessary

22   evidence to support Ms. Lial's claims.

23       **Hostile Environment/Sexual Harassment**

24       The complaint's first claim alleges that defendants' conduct "constitutes hostile work

25   environment sexual harassment, in violation of Title VII" and that Mr. Woodward "engaged in a

26   persistent pattern of severe and pervasive harassment, which created a hostile environment for Plaintiff

27   in the workplace."  The Title VII sexual harassment claim further alleges that the County "failed to

28   investigate Plaintiff's complaint and/or failed to take adequate remedial action" and that "[h]arassment

1   continued to occur following Plaintiff's complaint and Defendant's response."

2   The complaint's second claim alleges that defendants' sexual harassment "created an abusive

3   working environment in violation of Government Code Section 12940(j)."[4]

### Limited Title VII Liability

5   Mr. Woodward contends Title VII liability is limited to the County as an employer.

6   "The liability scheme[] under Title VII . . . limit[s] civil liability to the employer." *Miller v.*

7   *Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993).  "Congress assessed civil liability only against

8   an employer under Title VII" and the "statutory scheme itself indicates that Congress did not intend to

9   impose individual liability on employees." *Miller*, 991 F.2d at 587.  As such, Mr. Woodward is not

10  subject to the Title VII hostile work environment/sexual harassment claim.

### Hostile Work Environment – Prima Facie Case

12  Defendants challenge Ms. Lial's ability to establish a prima facie case of a hostile work

13  environment/sexual harassment under Title VII and FEHA.

14  "To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show:

15  (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct

16  was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of

17  the plaintiff's employment and create an abusive work environment." *Gregory v. Widnall*, 153 F.3d

18  1071, 1074 (9th Cir. 1998) (analyzing Title VII claim).[5]

19  Not all workplace conduct which may be described as harassment affects a term, condition, or

20  privilege of employment.  *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986)

21  (addressing sexual harassment claims under Title VII); *Aguilar v. Avis Rent A Car System, Inc.*, 21

22  Cal.4th 121, 129-130, 87 Cal.Rptr.2d 132, 138 (1999), *cert. denied*, 529 U.S. 1138, 120 S.Ct. 2029

---

24   [4]   California Government Code section 12940(j)(1) renders unlawful "[f]or an employer . . . or any other person because of . . . sex . . . to harass an employee . . .  Harassment of an employee . . .  by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.  An entity shall take all reasonable steps to prevent harassment from occurring."

27   [5]   Federal and California courts rely on federal interpretations of Title VII to interpret analogous FEHA provisions which prohibit unlawful discrimination. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *Clark v. Claremont Univ. Ctr. & Graduate Sch.*, 6 Cal.App.4th 639, 662, 8 Cal.Rptr.2d 151 (1992).

(2000).  For harassment to be actionable, it must be sufficiently severe and pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings*, 477 U.S. at 67, 106 S.Ct. 2399 (citation omitted); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 608, 262 Cal.Rptr. 842 (1989).  "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Reno v. Baird*, 18 Cal.4th 640, 646-647, 76 Cal.Rptr.2d 499 (1998).

"The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended." *Fisher*, 214 Cal.App.3d at 609-610, 262 Cal.Rptr. 842.  If the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no actionable harassment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-371 (1993).

"Harassment cannot be occasional, isolated, sporadic, or trivial[;] rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Fisher*, 214 Cal.App.3d at 610, 262 Cal.Rptr. 842.  A plaintiff must prove more than a few isolated incidents of racial enmity. *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1394 (8th Cir. 1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347 (1984); *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2nd Cir. 1986).  "When the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, the law is violated." *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal.App.4th 397, 409, 27 Cal.Rptr.2d 457 (1994) (internal quotations and citations omitted).

The Ninth Circuit uses "a totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of hostile work environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).  Factors considered include frequency, severity and level of interference with work performance and whether discriminatory conduct is physically threatening or humiliating or a mere offensive utterance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788, 118 S.Ct. 2275

16

1   (1998); *Brooks*, 229 F.3d at 924 (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367); *Lappin v. Laidlaw*

2   *Transit, Inc.*, 179 F.Supp.2d 1111 (N.D. Cal. 2001).

3        The Ninth Circuit applies a "reasonableness" approach to employer remedies to stop harassment:

4   We too believe that remedies should be "reasonably calculated to end the harassment."
    *Katz*, 709 F.2d at 256. An employer's remedy should persuade individual harassers to

5   discontinue unlawful conduct. We do not think that all harassment warrants dismissal,
    *Barrett*, 726 F.2d at 427; rather, remedies should be "assessed proportionately to the

6   seriousness of the offense." *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309
    (5th Cir.1987). Employers should impose sufficient penalties to assure a workplace free

7   from sexual [or racial] harassment. In essence, then, we think that the reasonableness of
    an employer's remedy will depend on its ability to stop harassment by the person who

8   engaged in harassment. In evaluating the adequacy of the remedy, the court may also
    take into account the remedy's ability to persuade potential harassers to refrain from

9   unlawful conduct.

10  *Ellison,* 924 F.2d 872, 882 (9th Cir. 1991).

11       Defendants note that Mr. Woodward's alleged pre-supervisory misconduct comprised attempting

12  to humiliate her in unit meetings, attempting to get her in trouble with her supervisor regarding cases

13  that they had each worked on, and spreading rumors that she had made degrading comments about other

14  employees. Defendants further note that Mr. Woodward's alleged supervisory misconduct comprised:

15       1.    Criticizing constantly her performance;

16       2.    Reprimanding her several times;

17       3.    Suspending her twice without pay;

18       4.    Demeaning her in March 2008 by requiring her to be trained by coworker Mr.

19           Miramontes who has less seniority;

20       5.    Replacing her County car with a truck;

21       6.    Instructing her to organize her desk;

22       7.    Denying her request to attend training;

23       8.    Denying two vacation requests over 2½ years; and

24       9.    Forcing her to take six minutes of vacation time when she was late.

25  ***Conduct Based On Sex***

26       Defendants challenge that Mr. Woodward's alleged misconduct was based on sex in that Ms. Lial

27  acknowledges that Mr. Woodward's alleged harassment arose from personal animosity for their failed

28  romantic relationship. Defendants attribute Ms. Lial to claim "jilted love turned harassment."

17

1    In *Succar v. Dade County School Bd.*, 60 F.Supp.2d 1309, 1314-1315 (S.D. Fla. 1999), a fellow

2    district court explained:

> Here, we have the classic setting of a love affair gone awry, with [defendant] Ms. Lorenz
> (taking the facts in the light most favorable to Plaintiff) playing the part of the proverbial
> jilted lover attempting to seek retribution. As such, the Court finds that Ms. Lorenz's
> harassment arises not out of the fact that Plaintiff is male, but rather, out of the
> termination of the intimate physical and emotional relationship she shared with him.
> Clearly, the end of this ill-fated relationship brought with it hurt feelings and bruised
> egos – perfect ingredients for the bearing of a grudge. Viewing the undisputed material
> facts in the light most favorable to Plaintiff, it is clear to the Court that the consequence
> of the failed relationship (i.e., Ms. Lorenz's harassment of Plaintiff) was not the result of
> Plaintiff's gender "but of responses to an individual because of her former intimate place
> in [that individual's] life." *Keppler v. Hinsdale Township High Sch. Dist. 86*, 715 F.Supp.
> 862, 869 (N.D.Ill.1989). In other words, Plaintiff's gender was not the impetus for Ms.
> Lorenz's conduct; rather, it was merely coincidental to that conduct. *See Huebschen v.
> Department of Health and Soc. Servs.*, 716 F.2d 1167, 1172 (7th Cir.1983).

11    Moreover, "[p]ersonal animosity is not the equivalent of sex discrimination" and a "plaintiff

12    cannot turn a personal feud into a sex discrimination case by accusation." *McCollum v. Bolger*, 794 F.2d

13    602, 610 (11th Cir.1986) *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883 (1987).

14    Defendants seek to defeat the Title VII and FEHA hostile environment/sexual harassment claims

15    in that "Mr. Woodward's alleged conduct was based on personal animosity, which is not the equivalent

16    of harassment based on sex." Indeed, in her deposition, Ms. Lial attributed Mr. Woodward's harassment

17    to her ending their romantic relationship.  As such, Ms. Lial concedes that her gender was not the

18    impetus for Mr. Woodward's conduct.  As a reminder, to prevail, "an employee claiming harassment

19    based upon a hostile work environment must demonstrate that the conduct complained of was severe

20    enough or sufficiently pervasive to alter the conditions of employment and create a work environment

21    that qualifies as hostile or abusive to employees **because of their sex**."  *Miller v. Department of

22    Corrections*, 36 Cal.4th 446, 462, 115 P.3d 77 (2005).  The record lacks evidence that purported

23    harassment of Ms. Lial was based on her sex.

### *Different Treatment*

25    Defendants further challenge Ms. Lial's hostile environment/sexual harassment claims in the

26    absence of evidence that "females were treated differently than males."

27    The critical issue for sexual harassment "is whether members of one sex are exposed to

28    disadvantageous terms or conditions of employment to which members of the other sex are not

exposed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998) (quoting *Harris,* 510 U.S. at 25, 114 S.Ct. at 372 (Ginsburg J., concurring)).  The U.S. Supreme Court has noted that sexual harassment may arise in the absence of " explicit or implicit proposals of sexual activity":

> But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace.

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80-81, 118 S.Ct. 998.

Defendants point out that Ms. Lial acknowledges that since her romantic relationship with Mr. Woodward ended, Mr. Woodward neither has made unwarranted sexual advances nor engaged in unwarranted sexual conduct.  As such, defendants hold Ms. Lial "to prove her sexual harassment claims with comparative evidence of how Mr. Woodward treated others."  Defendants note the absence of such evidence to further doom her hostile environment/sexual harassment claims.

### Mr. Woodward's Pre-Supervisory Conduct

Defendants point to an absence of evidence of Mr. Woodward's alleged harassment during September 2006-November 2007, prior to his becoming Ms. Lial's supervisor.  Defendants argue that Ms. Lial is unable to show that "Mr. Woodward's alleged conduct was severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile working environment."  Defendants point to Ms. Lial's testimony that Mr. Woodward's pre-supervisory conduct "wasn't that big of an issue" in that "we didn't have to have a whole lot of interaction."  Ms. Lial did not complain about Mr. Woodward's conduct during October 2006 to November 2007 because "there was no need to bring it up" unless "it gets to a point where it's kind of really causing me some problems."

### Mr. Woodward's Supervisory Conduct

Defendants contend that Mr. Woodward's conduct as Ms. Lial's supervisor was not harassment in that it reflects his "managerial actions" to supervise Ms. Lial's performance, establish policies and procedures, and align DER practices.  Defendants note the distinction between sexual harassment and gender discrimination.

Courts apply "the concept of delegable authority as a test to distinguish conduct actionable as discrimination from conduct actionable as harassment" in that "exercise of personnel management

1  authority properly delegated by an employer to a supervisory employee might result in discrimination,

2  but not in harassment." *Reno*, 18 Cal.4th at 646, 76 Cal.Rptr.2d 499; *See Stephens v. Kay Management*

3  *Co., Inc.* 907 F.Supp. 169, 171, 173 (E.D.Va. 1995) (no personal liability of individual supervisors for

4  "employment-related decisions" or "personnel decisions of a plainly delegable character").   The

5  California Supreme Court has explained:

6          Making a personnel decision is conduct of a type fundamentally different from the type
        of conduct that constitutes harassment. Harassment claims are based on a type of conduct
7        that is avoidable and unnecessary to job performance. . . . Making personnel decisions
        is an inherent and unavoidable part of the supervisory function. Without making
8        personnel decisions, a supervisory employee simply cannot perform his or her job duties.

9             . . . commonly necessary personnel management actions such as hiring and firing,
        job or project assignments, office or work station assignments, promotion or demotion,
10       performance evaluations, the provision of support, the assignment or nonassignment of
        supervisory functions, deciding who will and who will not attend meetings, deciding who
11       will be laid off, and the like, do not come within the meaning of harassment. These are
        actions of a type necessary to carry out the duties of business and personnel management.
12       These actions may retrospectively be found discriminatory if based on improper motives,
        but in that event the remedies provided by the FEHA are those for discrimination, not
13       harassment. Harassment, by contrast, consists of actions outside the scope of job duties
        which are not of a type necessary to business and personnel management. This significant
14       distinction underlies the differential treatment of harassment and discrimination in the
        FEHA."

15

16  *Reno*, 18 Cal.4th at 646, 76 Cal.Rptr.2d 499 (quoting *Janken v. GM Hughes Electronics*, 46 Cal.App.4th

17  55, 63-65 (1996).

18         Mr. Woodward's alleged misconduct since becoming Ms. Lial's supervisor addresses is exercise

19  of personnel management authority.  The gist of his alleged misconduct is supervision of Ms. Lial's

20  work performance.  Such conduct does not equate to harassment to warrant summary judgment for

21  defendants on Ms. Lial's hostile environment/sexual harassment claims.

22                                    **Sexual Discrimination**

23         The complaint's third claim alleges that Ms. Lial "was subject to severe and pervasive

24  discrimination by the County on the basis of her sex" to violate 42 U.S.C. § 2000e-2(a)(1) which renders

25  as an "unlawful employment practice for an employer" to "discriminate against any individual with

26  respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

27  . . . sex . . ."

28         The complaint's fourth claim alleges that the County "discriminated against Ms. Lial in

compensation or in terms, conditions or privileges of employment based upon her sex" to violate Government Code Section 12940(a) which deems unlawful: "For an employer, because of . . . sex . . . to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

Ms. Lial claims that Mr. Woodward discriminated against her by:

1.    Criticizing constantly her work performance;

2.    Issuing her "several letters of reprimand";

3.    Issuing her two suspensions without pay;

4.    Requiring her to be trained by less senior Mr. Miramontes; and

5.    "[L]aunching two investigations against her.

### Burden Shifting Framework

Defendants challenge the merits of Ms. Lial's discrimination and retaliation claims.  For Title VII and FEHA discrimination and retaliation claims at issue here, courts apply the *McDonnell Douglas*[6] burden-shifting framework. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007); *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 730-731 (9th Cir. 1986) (order and allocation of proof for retaliation claims follow familiar scheme announced in *McDonnell Douglas*).  "At the first step of *McDonnell Douglas*, the plaintiff must establish a prima facie case of discrimination or retaliation." *Metoyer*, 504 F.3d at 931, n. 6.  "If the plaintiff makes out her prima facie case of either discrimination or retaliation, the burden then 'shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory [or retaliatory] conduct.'" *Metoyer*, 504 F.3d at 931, n. 6 (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003)).

"Finally, at the third step of *McDonnell Douglas*, if the employer articulates a legitimate reason for its action, 'the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required'" under F.R.Civ.P. 56(e)(2). *Metoyer*, 504 F.3d at 931 (quoting *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citations and internal quotation marks omitted)).  If the employer carries its burden, plaintiff must

---

[6]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

1   have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the

2   employer were not its true reasons but were a pretext for discrimination. *Texas Dept. of Community*

3   *Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *McDonnell Douglas*, 411 U.S. at 804; 93

4   S.Ct. 1817*; see Brundage v. Hahn*, 57 Cal.App. 4th 228, 66 Cal.Rptr.2d 830, 835 (1997).  "If a plaintiff

5   succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive,

6   summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be

7   believed." *Washington v. Garrett*, 10 F.3d 1421, 1432-1433 (9th Cir. 1993).

8        Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff to

9   show that the employer intentionally discriminated because of the plaintiff's sex. *See Burdine*, 450 U.S.

10  at 253, 101 S.Ct. 1089; *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000); *Rose v. Wells*

11  *Fargo & Co.*, 902 F.2d 1417, 1420-1421 (9th Cir. 1990), *cert. denied,* 533 U.S. 950, 121 S.Ct. 2592

12  (2001).

13       As an alternative to the *McDonnell Douglas* framework, a plaintiff responding to a summary

14  judgment motion "may simply produce direct or circumstantial evidence demonstrating that a

15  discriminatory [or retaliatory] reason more likely than not motivated [the employer]." *McGinest v. GTE*

16  *Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citation omitted).  The "*McDonnell Douglas* test is

17  inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc.*

18  *v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613 (1985).

19       "When the plaintiff offers direct evidence of discriminatory [or retaliatory] motive, a triable issue

20  as to the actual motivation of the employer is created even if the evidence is not substantial. . . . it need

21  be 'very little.'" *Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting *Lindahl*

22  *v. Air France*, 930 F.2d 1434, 1438 (9th Cir 1991)).  "Direct evidence is evidence which, if believed,

23  proves the fact [of retaliation] without inference or presumption." *Goodwin*, 150 F.3d at 1221 (citation

24  omitted).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory

25  statements or actions by the employer." *Coghlan v. American Seafoods Co. LLC.,* 413 F.3d 1090, 1095

26  (9th Cir. 2005).

27       With these evidentiary standards in mind, this Court turns to the worthiness of Ms. Lial's

28  discrimination and retaliation claims.

1

***Prima Facie Case Of Discrimination***

2    Ms. Lial pursues a disparate treatment claim that females were treated less favorably because of

3 their sex.  A disparate treatment theory "requires a showing that the employer acted with discriminatory

4 intent."  *Jones v. Department of Corrections and Rehabilitation,* 152 Cal.App.4th 1367, 1379, 62

5 Cal.Rptr.3d 200 (2007).

6    To succeed on a disparate treatment claim, a plaintiff has an initial burden to establish a prima

7 facie case of discrimination, that is, "a set of circumstances that, if unexplained, permit an inference that

8 it is more likely than not the employer intentionally treated the employee less favorably than others on

9 prohibited grounds." *Jones,* 152 Cal.App.4th at 1379, 62 Cal.Rptr.3d 200; *see Bradley v. Harcourt,*

10 *Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (plaintiff "bears the initial burden of establishing a

11 prima facie case of discrimination by introducing evidence that gives rise to an inference of unlawful

12 discrimination").

13    For a prima facie case, a plaintiff "must generally show" that:

14    1.    He/she was a member of a protected class;

15    2.    He/she was qualified for the position sought and performed his/her job satisfactorily;

16    3.    He/she suffered an adverse employment action; and

17    4.    Similarly situated individuals outside the protected class were treated more favorably,

18        or other circumstances surrounding the adverse employment action give rise to an

19        inference of discrimination.

20 *Hawn v. Executive Jet Management, Inc.,* 615 F.3d 1151, 1156 (9th Cir. 2010); *Jones*, 152 Cal.App.4th

21 at 1379, 62 Cal.Rptr.3d 200 (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354-355, 100 Cal.Rptr.2d

22 352 (2000) (adopting the test applicable to federal discrimination claims in accordance with *McDonnell*

23 *Douglas*)).

24    "On a defense motion for summary judgment against a disparate treatment claim, the defendant

25 must show either that one of these elements cannot be established or that there were one or more

26 legitimate, nondiscriminatory reasons underlying the adverse employment action."  *Jones*, 152

27 Cal.App.4th at 1379, 62 Cal.Rptr.3d 200.

28    Defendants challenge Ms. Lial's ability to demonstrate that she performed her job satisfactorily

1  or that similarly situated persons outside the protected class were treated more favorably.

2  *Unsatisfactory Job Performance*

3  Defendants point to a lack of evidence that Ms. Lial performed her job satisfactorily given that

4  during four years she received from five supervisors eight memos of discussion, a letter of reprimand

5  and two suspensions without pay.  Defendants note the common thread of Ms. Lial's discipline of

6  "failure to follow procedures when working on cases, delay in working on cases, and poor

7  responsiveness to County employees and residents."

8  A review of Ms. Lial's discipline since 2005 reveals recurring problems with her work delays,

9  missed deadlines, blaming others, disruptive attitude, attempts to undermine authority, lack of diligence,

10  inaccuracies, inefficiency, hostility, unwillingness to follow instructions, inability to accept criticism,

11  lack of improvement and organization, dishonesty, insubordination, inexcusable neglect of duty, and

12  incompetence.  The evidence reveals that Ms. Lial cannot establish her satisfactory job performance.

13  *Disparate Treatment*

14  Defendants challenge Ms. Lial's evidence that "Mr. Woodward treated men more favorably than

15  women."  Defendants note that in her deposition, Ms. Lial lacks specifics or reasons of Mr. Woodward's

16  favoring men and merely pointed to Mr. Woodward's "BS'ing" with men.  Defendants are correct that

17  Ms. Lial lacks evidence that Mr. Woodward treated men more favorably than women.

18  *Legitimate, Non-Discriminatory Reasons*

19  Defendants argue that despite Ms. Lial's lack of a prima facie case of discrimination, the County

20  utilized "legitimate reasons for correcting or disciplining" Ms. Lial.  Defendants reiterate that "five

21  different supervisors have issued Plaintiff documentation regarding similar, recurring performance

22  issues."

23  If plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some

24  legitimate, nondiscriminatory reason" for adverse employment action.  *McDonnell Douglas Corp.,* 411

25  U.S. at 802, 93 S.Ct. 1817; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101

26  S.Ct. 1089, 1094-1095 (1981); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000), *cert.*

27  *denied*, 533 U.S. 950, 121 S.Ct. 2592 (2001); *Guz*, 24 Cal.4th at 355-356, 100 Cal.Rptr. at 379;

28  *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830, 835 (1997).  "The defendant's burden

24

at this stage is one of production, not persuasion. The court may not make a credibility assessment." *Njenga v. San Mateo County Superintendent of Schools*, 2010 WL 1261493, at \*14 (N.D. Cal. 2010) (citing *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097 (2000)).  If the employer presents admissible evidence that one of more of plaintiff's prima facie elements is lacking or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer is entitled to summary judgment unless the plaintiff produces admissible evidence to raise a triable issue of fact material as to the employer's showing.  *Caldwell v. Paramount Unified School District*, 41 Cal.App.4th 189, 203, 48 Cal.Rptr.2d 448, 457 (1995).

This Court need not repeat Ms. Lial's extensive disciplinary record which is replete with documentation of numerous deficiencies, including, for example, uncooperativeness, unresponsiveness, failure to follow procedures, dishonesty, insubordination, disrespect, inaccuracies, disorganization, and exposing the County to potential liability.  The record offers nothing meaningful to raise a factual issue as to her disciplinary record which supports legitimate, non-discriminatory reasons for her treatment.

### *Pretext*

Defendants challenge Ms. Lial's ability to demonstrate that the County's grounds for Ms. Lial's treatment is a pretext for discrimination.

"If the defendant offers admissible evidence of a legitimate, nondiscriminatory reason for the claimed adverse action, the *McDonnell Douglas* framework and its presumption of discrimination disappears, and the plaintiff is left to prove by a preponderance of the evidence that the reasons offered by the defendant are merely a pretext for discrimination." *Njenga*, 2010 WL 1261493, at \*14 (citing *see Reeves*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000)).  If the employer carries its burden, plaintiff must have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804; 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *see Manatt v. Bank of America,* N.A., 339 F.3d 792, 801 (9th Cir. 2003) ("Because [plaintiff] failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary judgment for the [defendant] must be affirmed."); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (failure to "produce any specific, substantial evidence of pretext" support summary judgment for employer);  *Brundage*, 57 Cal.App.4th

1    at 236, 66 Cal.Rptr.2d at 835.

2        Ms. Lial's claim of pretext appears to be grounded in Mr. Woodward's dissatisfaction with Mr.

3    Lial ending their romantic relationship.  Ms. Lial's perception of Mr. Woodward's feelings or motives

4    fails to challenge meaningfully the numerous legitimate reasons to support her discipline.  The record

5    lacks specific, substantial evidence of pretext to discriminate against Ms. Lial based on her sex.

6        In short, defendants are entitled to summary judgment on Ms. Lial's discrimination claims.

7                                    **FEHA Retaliation**

8        The complaint's fifth claim alleges that defendants "retaliated against Ms. Lial by adversely

9    affecting Ms. Lial's employment after she complained about and/or opposed harassment and

10   discrimination" which Ms. Lial claims to violate FEHA.  California Government Code section 12940(h)

11   renders unlawful for an employer "to discharge, expel, or otherwise discriminate against any person

12   because the person has opposed any practices forbidden under this part or because the person has filed

13   a complaint, testified, or assisted in any proceeding under this part."  California Government Code

14   section 12940(h) "incorporates other unlawful employment practices defined in other parts of section

15   12940, and forbids retaliation against anyone opposing any such unlawful employment practice." *Jones*

16   *v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1164, 72 Cal.Rptr.3d 624 (2008).

17                              ***Prima Facie Case Of Retaliation***

18       Ms. Lial supports alleged retaliation with Mr. Woodward's same conduct to support her

19   harassment claims.  Defendants challenge Ms. Lial's ability to establish a prima facie case of FEHA

20   retaliation.

21       Courts use the same burden shifting frame work for discrimination claims to analyze FEHA

22   retaliation claims.  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042, 116 P.3d 1123 (2005).  To

23   make out a retaliation prima facie case, a plaintiff must demonstrate that:

24       1.    He/she engaged in protected activity;

25       2.    He/she suffered an adverse employment action; and

26       3.    There was a causal link between his/her activity and the employment action.

27   *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003); *Yanowitz*, 36 Cal.4th at

28   1042, 116 P.3d 1123; *Fisher*, 214 Cal.App.3d at 615, 262 Cal.Rptr. 842.

1    Defendants contend that Ms. Lial is unable to establish that she engaged in a protected activity

2    in that Ms. Lial attributes Mr. Woodward's retaliation to Ms. Lial's ending their romantic relationship.

3    Defendants are correct that "[e]nding a romantic relationship is not an activity protected by FEHA."

4    Defendants further challenge existence of a causal link between a protected activity and an

5    adverse employment action.

6    "To establish causation, the plaintiff must show by a preponderance of the evidence that

7    engaging in the protected activity was one of the reasons for the adverse employment decision and that

8    but for such activity the decision would not have been made." *Kraus v. Presidio Trust Facilities*

9    *Division/Residential Management Branch*, __ F.Supp.2d __, 2010 WL 1293788 (N.D. Cal. 2010) (citing

10   *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir.2002)). "The causal link may be

11   established by an inference derived from circumstantial evidence, 'such as the employer's knowledge

12   that the [plaintiff] engaged in protected activities and the proximity in time between the protected action

13   and allegedly retaliatory employment decision.'" *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)

14   (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).

15   Again, defendants rely on Ms. Lial's acknowledgment that Mr. Woodward's alleged retaliation

16   arose from Ms. Lial's ending their romantic relationship to negate adverse employment action arising

17   from Ms. Lial's protected activity.  Defendants are correct that Ms. Lial is unable to establish the

18   causation link in the absence of a recognized protected activity.

19                                    ***Legitimate, Non-Discriminatory Reasons***

20   Defendants reiterate that their legitimate, non-discriminatory reasons to defeat Ms. Lial's

21   discrimination claims likewise defeat her FEHA retaliation claim.  Defendants are correct.

22                                                    ***Pretext***

23   Defendants argue that Ms. Lial lacks evidence that "the County's articulated reasons for its

24   actions are a pretext for retaliation."   "If the employer produces a legitimate reason for the adverse

25   employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back

26   to the employee to prove intentional retaliation." *Akers v. County of San Diego*, 95 Cal.App.4th 1441,

27   1453, 116 Cal.Rptr.2d 602 (2002).  Ms. Lial lacks evidence of pretext to further doom her FEHA

28   retaliation claim, on which defendants are entitled to summary judgment.

27

**FEHA Disability Discrimination**

The complaint's sixth claim alleges that the County "discriminated against Ms. Lial based upon her physical or mental disability" to violate California Government Code section 12940(a), which deems unlawful: "For an employer, because of . . . physical disability, mental disability, medical condition . . . to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

***Prima Facie Case Of FEHA Disability Discrimination***

Defendants challenge Ms. Lial's evidence to establish a prima facie case of FEHA disability discrimination.

Elements of a prima facie case of disability discrimination are that the plaintiff:

1.    Suffers from a disability;

2.    Is otherwise qualified to perform his/her job with or without reasonable accommodation in the case of a disability claim; and

3.    Was subjected to adverse employment action because of the disability.

*Faust v. California Portland Cement Co.*, 150 Cal.App.4th 864, 886, 58 Cal.Rptr.3d 729 (2007): *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 255-256, 102 Cal.Rptr.2d 55 (2000); *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830, 835 (1997); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802; 93 S.Ct. 1817 (1973); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785 (1988).

Defendants contend that Ms. Lial is unable to "prove she suffered an adverse employment action because of her alleged disability."  Defendants are correct.  Ms. Lial claims a stress disability but acknowledges that she lacks evidence that the County discriminated against her because of stress.  Ms. Lial claims that the County took adverse employment action because of her stress by denying her accommodation request and interfering with her ability to get a code enforcement management position with the City of Manteca.  Ms. Lial acknowledges her lack of evidence that the County interfered with her ability to obtain the City of Manteca position or whether the City of Manteca and County communicated regarding Ms. Lial.

28

1    Defendants note that failure to accommodate is a separate FEHA claim under California

2  Government Code section 12940(m), which the complaint does not allege.  Defendants further point to

3  a lack of evidence to support a failure to accommodate claim in that there is no evidence of Ms. Lial's

4  restrictions requiring accommodation.  The record reveals that Dr. Cheang released Ms. Lial to return

5  to work on March 11, 2009 but identified neither a disability, Ms. Lial's restrictions nor essential job

6  functions which Ms. Lial could not perform.  On April 20, 2009, Dr. Neumeyer released Ms. Lial "to

7  full duty with no restrictions."  Ms. Lial never responded to Ms. Rorabaugh's requests for medical

8  documentation of Ms. Lial's restrictions and necessary accommodations to satisfy the restrictions.

9    "It is an employee's responsibility to understand his or her own physical or mental condition well

10  enough to present the employer at the earliest opportunity with a concise list of restrictions which must

11  be met to accommodate the employee." *Jensen,* 85 Cal.App.4th at 266, 102 Cal.Rptr.2d 55.  "An

12  adverse employment decision cannot be made 'because of' a disability, when the disability is not known

13  to the employer." *Brundage*, 57 Cal.App.4th at 237, 66 Cal.Rptr.2d 830.  To prove a disability

14  discrimination claim, "a plaintiff must prove the employer had knowledge of the employee's disability

15  when the adverse employment decision was made." *Brundage*, 57 Cal.App.4th at 237-238, 66

16  Cal.Rptr.2d 830.  "While knowledge of the disability can be inferred from the circumstances, knowledge

17  will only be imputed to the employer when the fact of disability is the only reasonable interpretation of

18  the known facts. Vague or conclusory statements revealing an unspecified incapacity are not sufficient

19  to put an employer on notice of its obligations under the [FEHA]." *Brundage*, 57 Cal.App.4th at 237,

20  66 Cal.Rptr.2d 830.

21    The record reveals that Ms. Lial neither identified nor articulated a disability needing

22  accommodation.  As such, the County knew of no disability, and Ms. Lial is unable to establish that she

23  suffered adverse employment due to a disability.

24                          ***Exhaustion Of Administrative Remedies***

25    Defendants challenge the scope of Ms. Lial's DFEH charge to include a FEHA disability

26  discrimination claim.

27    FEHA requires a claimant to file a DFEH charge prior to pursuing a court action.  *See* Cal. Gov.

28  Code, § 12965(b).  "Under the FEHA, the employee must exhaust the administrative remedy provided

by the statute by filing a complaint with the Department of Fair Employment and Housing . . . and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA." *Romano v. Rockwell Internat., Inc.*, 14 Cal.4th 479, 492, 59 Cal.Rptr.2d 20 (1996).   FEHA places a one-year limit from the time of the alleged unlawful practice to file a DFEH charge. *See* Cal. Gov. Code, § 12960(d) ("No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred . . .")

Defendants argue that Ms. Lial did not file her DFEH charge, dated December 24, 2008, within one year after alleged disability discrimination in that the alleged disability discrimination arose in January 2009, after the filing of the DFEH charge.   Defendants conclude that Ms. Lial "could not have validly included disability discrimination in her DFEH complaint a month before the alleged discrimination occurred."   Defendants point out that the alleged January 2009 disability discrimination did not relate back to her December 24, 2008 DFEH charge. "[A]mendments introducing a new theory of recovery generally do not relate back" in that "[e]ven if the factual allegations of the original [administrative] complaint, rather than the legal theory, establish the proper boundaries of the charge, the factual allegations must be able to bear the weight of the new theory added by amendment." *Rodriguez v. Airborne Express*, 265 F.3d 890, 899 (9th Cir. 2001) (plaintiff's "timely administrative complaint fails to offer an adequate factual basis to support a charge of disability discrimination, and thus fails to warrant relation back").

The record reveals that Ms. Lial has failed to exhaust a disability discrimination claim in that the DFEH charge addresses discrimination, harassment and retaliation for "my prior complaints of discrimination, harassment and retaliation."   Failure to exhaust administrative remedies further supports summary judgment for defendants on Ms. Lial's FEHA disability discrimination charge.

**FEHA Failure To Prevent Discrimination And Harassment**

The complaint's seventh claim alleges that the County "did nothing to rectify . . . discrimination and harassment and failed to take all reasonable steps to prevent harassment" to violate FEHA.   The claim further alleges that the County "allowed a hostile environment to develop against Ms. Lial and then caused Ms. Lial to suffer adverse employment action."

1    California Government Code section 12940(k) deems unlawful an employer's failure "to take

2  all reasonable steps necessary to prevent discrimination and harassment from occurring." Nonetheless,

3  "[e]mployers should not be held liable to employees for failure to take necessary steps to prevent such

4  conduct, except where the actions took place and were not prevented." *Trujillo v. North County Transit*

5  *Dist.*, 63 Cal.App.4th 280, 289, 73 Cal.Rptr.2d 596 (1998).

6    Defendants note an absence of actionable discrimination or harassment to invoke California

7  Government Code section 12940(k). Defendants point out that investigations of Ms. Rorabaugh and an

8  outside investigator failed to substantiate five of Ms. Lial's complaints and that Ms. Lial lacks evidence

9  that their investigations were unfair or inadequate. Ms. Lial acknowledges that she has "no idea what

10  steps" Ms. Rorabaugh took for her investigation and "can't even begin to guess what she should have

11  done." Defendants conclude that Ms. Lial's California Government Code section 12940(k) claim "is

12  based entirely on conjecture."

13    Defendants are correct that Ms. Lial has failed to meet her "burden of presenting evidence

14  establishing a genuine issue of fact that the employer's response was unreasonable." *See Ford v. West*,

15  222 F.3d 767, 776 (10th Cir. 2000) (analyzing Title VII claim). Ms. Lial lacks a failure to prevent

16  discrimination and harassment claim in the absence of cognizable discrimination and harassment. The

17  record reveals that the County properly responded to Ms. Lial's unsubstantiated complaints. Defendants

18  have negated the claim.

19                                    **CONCLUSION AND ORDER**

20    For the reasons discussed above, this Court:

21  1.    GRANTS defendants summary judgment;

22  2.    DIRECTS the clerk to enter judgment against plaintiff Pamela Lial and in favor of

23         defendants County of Stanislaus and Tod Woodward and to close this action; and

24  3.    VACATES the January 4, 2011 pretrial conference and February 14, 2011 trial.

25    IT IS SO ORDERED.

26  **Dated:    November 23, 2010**                     **/s/ Lawrence J. O'Neill**
                                                   UNITED STATES DISTRICT JUDGE

27

28