IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA LIAL,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>COUNTY OF STANISLAUS, et al,<br><br>　　　　　　Defendants.<br>_____/ | CASE NO. CV F 09-1039 LJO JLT<br><br>**ORDER ON DEFENDANT COUNTY'S ATTORNEY FEES MOTION**<br>(Doc. 32.) |

**INTRODUCTION**

Defendant County of Stanislaus ("County") seeks to recover $85,855.50 attorney fees to defend and defeat on summary judgment pro se plaintiff Pamela Lial's ("Ms. Lial's") employment harassment, discrimination and retaliation claims against the County and Ms. Lial's former supervisor defendant Tod Woodward ("Mr. Woodward"). Ms. Lial filed no timely papers to oppose an attorney fees award. This Court considered the County's attorney fees motion on the record and VACATES the January 20, 2011 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court AWARDS the County a $31,360 attorney fees award.

**BACKGROUND**

**Summary**

On June 12, 2009, Ms. Lial filed her complaint ("complaint") to allege claims, which will be discussed in greater detail below, for hostile work environment, sexual harassment, sexual and disability

1

1  discrimination, retaliation, and failure to prevent discrimination and harassment to violate Title VII of
2  the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, and the California Fair Employment and Housing Act
3  ("FEHA"), Cal. Gov. Code, §§ 12900, et seq.  The County retained Liebert Cassidy Whitmore ("LCW")
4  to defend the County and Mr. Woodward (collectively "defendants").  Eight-year associate attorney Jesse
5  Maddox ("Mr. Maddox") was the primary LCW attorney assigned to the defense.

6        This Court's November 23, 2010 summary judgment decision ("decision") granted the County
7  and Mr. Woodward summary judgment on all of Ms. Lial's claims.  The County seeks to recover all its
8  fees expended to defend Ms. Lial's claims against the County and Mr. Woodward given the "frivolity"
9  of Ms. Lial's claims and her "bad faith tactics" during litigation, including pursuit of her claims when
10  she knew or should have known she lacked evidence to support them.

11        **Ms. Lial's Bad Faith Tactics And Settlement Rejections**

12        Mr. Maddox' declaration outlines the following which the County characterizes as Ms. Lial's
13  bad faith tactics prior to summary judgment.

14        Mr. Maddox attended December 2, 2009 and January 14, 2010 scheduling conferences which
15  were continued at Ms. Lial's request for additional time to secure counsel.  At the February 16, 2010
16  scheduling conference, Ms. Lial's further request for a continuance to secure counsel was denied and
17  discovery, motion and trial dates were set.

18        On February 11, 2010, Mr. Maddox traveled from Fresno to Modesto for an informal settlement
19  conference to address this action and Ms. Lial's workers' compensation case against the County.  The
20  County offered $50,000 with Ms. Lial's resignation or $10,000 without her resignation.  Ms. Lial
21  rejected the alternative offers and countered with $1.5 million.

22        Although F.R.Civ.P. 26(1)(A) initial disclosures were due on March 30, 2010, Ms. Lial did not
23  provide her initial disclosures until April 5, 2010.  In addition, Ms. Lial delayed until August 27, 2010
24  to provide written discovery responses which were due July 20, 2010.

25        In June 2010, Mr. Maddox arranged with Ms. Lial for a July 6, 2010 mediation.  The County
26  agreed to pay all mediation expenses.  Prior to the mediation, the mediator spent 1½ hours speaking with
27  Ms. Lial, and the County paid for the mediator's time.

28        By her June 30, 2010 email, Ms. Lial passed on mediation because she was required to use

vacation time to attend she did not have "that many hours of vacation on the books." Nonetheless, Ms. Lial took vacation on July 7, 2010, a day after the scheduled mediation. The County cancelled the mediation and paid the mediator's preparation fees.

On June 25, 2010, Mr. Maddox informed Ms. Lial that he wanted to depose her in July 2010. Ms. Lial responded that she was available except on July 23, 2010. Mr. Maddox noticed her deposition for July 22, 2010. Ms. Lial's July 8, 2010 email indicated that she could not attend a July 22, 2010 deposition but could attend on July 23, 2010 or any other Friday. Mr. Maddox rescheduled her deposition for July 23, 2010.

During a July 1, 2010 telephone conversation, Ms. Lial informed Mr. Maddox that the County's February 2010 offer of $50,000 was an "insult" and that her case was worth substantially more because she knew the County had incurred $800,000 in attorney fees in an unrelated case. Ms. Lial's July 22, 2010 email demanded $600,000 to settle.

Ms. Lial brought several documents to her July 23, 2010 deposition but refused to allow Mr. Maddox to copy the documents unless Ms. Lial watched the copying. Mr. Maddox claims that he could not make the copies. Ms. Lial did not produce the documents until August 27, 2010 when she brought them to work for the County to copy at its expense.

On September 30, 2010, Mr. Maddox informed Ms. Lial by telephone that "the County did not believe there was any merit to her claims and would be seeking costs and attorneys' fees from her if it prevailed" and that the fees could total $80,000-$100,000 and costs would be approximately $5,000. Mr. Maddox informed Ms. Lial that the County authorized a waiver of costs and fees in exchange for dismissal. Ms. Lial responded that she was being "railroaded" and that she would take Mr. Maddox' "threat" public to the newspaper. Ms. Lial rejected the County's offer.

During an October 5, 2010 settlement conference in Ms. Lial's workers' compensation case, the County offered $5,000 to settle her workers' compensation claim and to dismiss this action. Ms. Lial rejected the offer.

On October 29, 2010, Mr. Maddox explained to Ms. Lial defense arguments for summary judgment and that the County believed her claims were without merit. Mr. Lial responded that she intended to pursue her claims but would drop her quid pro quo sexual harassment claim.

On November 1, 2010, the County and Mr. Woodward filed their summary judgment papers which Ms. Lial did not oppose. The disposition of Ms. Lial's individual Title VII and FEHA claims will be addressed below.

## DISCUSSION

### Title VII And FEHA Attorney Fee Standards

Title VII permits an attorney fees recovery: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . ." 42 U.S.C. § 2000e-5. "A district court may grant attorney's fees to a prevailing private party in a Title VII action pursuant to 42 U.S.C. § 2000e-5(k). The statute itself does not list standards to be used by the court; it states only that fees may be awarded in the court's 'discretion.'" *E.E.O.C. v. Bruno's Restaurant*, 13 F.3d 285, 287 (9th Cir. 1993).

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-422, 98 S.Ct. 694 (1978), the U.S. Supreme Court outlined standards to guide district court discretion whether to award attorney fees to a prevailing defendant in a Title VII action:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.
>
> In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

"Thus, *Christiansburg* should be applied in pro se cases with attention to the plaintiff's ability to recognize the merits of his or her claims." *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir. 1987).

"In determining whether a suit is frivolous, 'a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.'" *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985) (quoting *Jones v. Texas Tech University*, 656 F.2d 1137, 1145 (5th Cir.1981)). Cases finding "frivolity" "typically have been decided in the defendant's favor on a motion for summary judgment or a Fed.R.Civ.P. 41(b) motion for involuntary dismissal. In these cases, the plaintiffs did not

4

introduce any evidence to support their claims." *Sullivan*, 773 F.2d at 1189 (citing several decisions).

Factors to determine whether a claim is frivolous include: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan*, 773 F.2d at 1189.

California Government Code section 12965(b) authorizes an award of attorney fees and costs in a FEHA action:

> In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees, except where the action is filed by a public agency or a public official, acting in an official capacity.

Unlike a prevailing plaintiff, a "prevailing defendant, however, should be awarded fees under the FEHA only 'in the rare case in which the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Young v. Exxon Mobil Corp.*, 168 Cal.App.4th 1467, 1474, 86 Cal.Rptr.3d 507 (2008) (quoting *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*, 91 Cal.App.4th 859, 864, 110 Cal.Rptr.2d 903 (2001)). Despite the discretionary language of California Government Code section 12965(b), "the statute applies only if the plaintiff's lawsuit is deemed unreasonable, frivolous, meritless, or vexatious." *Mangano v. Verity, Inc.*, 167 Cal.App.4th 944, 949-950, 84 Cal.Rptr.3d 526 (2008).[1]

In *Rosenman*, 91 Cal.App.4th at 873-874, 110 Cal.Rptr.2d 903, the California Court of Appeal further addressed an attorney fees award to a prevailing defendant:

> The cases above demonstrate where the plaintiff's claim is frivolous, vexatious or unreasonable, it is appropriate to award attorney fees to the prevailing defendant. However, where the plaintiff presents a colorable claim, and particularly where the adverse jury verdict is less than unanimous, such an award is inappropriate in light of the very strong public antidiscrimination policy embodied in FEHA. Any other standard would have the disastrous effect of closing the courtroom door to plaintiffs who have meritorious claims but who dare not risk the financial ruin caused by an award of attorney fees if they ultimately do not succeed.

With these standards in mind, this Court turns to the disposition of Ms. Lial's individual Title VII and FEHA claims and in turn the County's grounds to seek attorney fees.

---

[1] Courts may apply federal authorities interpreting federal civil rights laws to address a FEHA attorney fees award. *See Linsley v. Twentieth Century Fox Film Corp.*, 75 Cal.App.4th 762, 766, 89 Cal.Rptr.2d 429 (1999).

5

**Hostile Environment/Sexual Harassment**

The complaint's first claim alleged that defendants' conduct "constitutes hostile work environment sexual harassment, in violation of Title VII" and that Mr. Woodward "engaged in a persistent pattern of severe and pervasive harassment, which created a hostile environment for Plaintiff in the workplace." The Title VII sexual harassment claim further alleged that the County "failed to investigate Plaintiff's complaint and/or failed to take adequate remedial action" and that "[h]arassment continued to occur following Plaintiff's complaint and Defendant's response."

The complaint's second claim alleged that defendants' sexual harassment "created an abusive working environment in violation of Government Code Section 12940(j)."

The decision concluded that since Title VII liability is limited to the County as an employer, Mr. Woodward is not subject to a Title VII hostile work environment/sexual harassment claim to warrant summary judgment for Mr. Woodward on the claim. The decision found a lack of evidence of "purported harassment of Ms. Lial . . . based on her sex," especially given that Ms. Lial attributed Mr. Woodward's harassment to her ending their romantic relationship to constitute Ms. Lial's concession "that her gender was not the impetus for Mr. Woodward's conduct." The decision concluded: "The gist of his alleged misconduct is supervision of Ms. Lial's work performance. Such conduct does not equate to harassment to warrant summary judgment for defendants on Ms. Lial's hostile environment/sexual harassment claims."

The County argues that Ms. Lial knew or should have known that alleged harassment was not based on sex and thus could not support a Title VII or FEHA claim. The County notes that Ms. Lial continued to pursue hostile work environment/sexual harassment claims after County investigations revealed that her claims were "unfounded." The County points out that Ms. Lial offered no evidence to indicate that she was harassed based on her sex, the linchpin for a prima facie case of sexual harassment.

**Sexual Discrimination**

The complaint's third claim alleged that Ms. Lial "was subject to severe and pervasive discrimination by the County on the basis of her sex" to violate 42 U.S.C. § 2000e-2(a)(1) which renders as an "unlawful employment practice for an employer" to "discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ."

The complaint's fourth claim alleged that the County "discriminated against Ms. Lial in compensation or in terms, conditions or privileges of employment based upon her sex" to violate Government Code Section 12940(a) which deems unlawful: "For an employer, because of . . . sex . . . to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

On summary judgment, defendants attacked the satisfactory job performance element of a prima facie case of discrimination. This Court agreed with defendants' analysis and noted in the decision:

> A review of Ms. Lial's discipline since 2005 reveals recurring problems with her work delays, missed deadlines, blaming others, disruptive attitude, attempts to undermine authority, lack of diligence, inaccuracies, inefficiency, hostility, unwillingness to follow instructions, inability to accept criticism, lack of improvement and organization, dishonesty, insubordination, inexcusable neglect of duty, and incompetence. The evidence reveals that Ms. Lial cannot establish her satisfactory job performance.

The decision further noted the absence of evidence "that Mr. Woodward treated men more favorably than women" to defeat the disparate treatment element of a prima facie case of sexual discrimination. The decision pointed to an absence of meaningful evidence "to raise a factual issue as to her disciplinary record which supports legitimate, non-discriminatory reasons for her treatment." Turning to pretext for discrimination, the decision commented that "Ms. Lial's perception of Mr. Woodward's feeling or motives fails to challenge meaningfully the numerous reasons to support her discipline. The record lacks specific, substantial evidence of pretext to discriminate against Ms. Lial based on her sex."

Defendants argue that Ms. Lial knew or should have known she would be unable to establish competent job performance or an inference of discriminatory animus" given the "overwhelming" evidence, particularly that regarding her poor job performance. Defendants point to Ms. Lial's "complete failure to produce any evidence supporting her sex discrimination claims."

**FEHA Retaliation**

The complaint's fifth claim alleged that defendants "retaliated against Ms. Lial by adversely affecting Ms. Lial's employment after she complained about and/or opposed harassment and

7

1  discrimination" which Ms. Lial claims to violate FEHA.

2  On summary judgment, defendants attacked the lack of evidence of a causal link between Ms. Lial's purported protected activity and adverse employment action in that Ms. Lial acknowledged that Mr. Woodward's alleged retaliation arose from Ms. Lial's ending their romantic relationship. This Court agreed with defendants' evaluation that "Ms. Lial is unable to establish the causation link in the absence of a recognized protected activity." In its decision, this Court further noted the lack of evidence to challenge defendants' legitimate, non-discriminatory reasons for treatment of Ms. Lial and of pretext to retaliate against Ms. Lial for engaging in protected activity.

9  As to attorney fees, the County reiterates the absence of evidence to hint of retaliation.

### FEHA Disability Discrimination

11  The complaint's sixth claim alleges that the County "discriminated against Ms. Lial based upon her physical or mental disability" to violate California Government Code section 12940(a), which deems unlawful: "For an employer, because of . . . physical disability, mental disability, medical condition . . . to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

16  In its decision, this Court agreed with defendants that Ms. Lial is unable to "prove she suffered an adverse employment action because of her alleged disability." The decision noted that "Ms. Lial neither identified nor articulated a disability needing accommodation. As such, the County knew of no disability, and Ms. Lial is unable to establish that she suffered adverse employment due to a disability."

20  As to attorney fees, the County reiterates the absence of evidence to hint of disability discrimination.

### FEHA Failure To Prevent Discrimination And Harassment

23  The complaint's seventh claim alleges that the County "did nothing to rectify . . . discrimination and harassment and failed to take all reasonable steps to prevent harassment" to violate FEHA. The claim further alleges that the County "allowed a hostile environment to develop against Ms. Lial and then caused Ms. Lial to suffer adverse employment action."

27  The decision noted the lack of a failure to prevent discrimination and harassment claim "in absence of cognizable discrimination and harassment. The record reveals that the County properly

responded to Ms. Lial's unsubstantiated complaints."

As to attorney fees, the County reiterates the absence of evidence to hint of failure to prevent discrimination or harassment.

### Frivolous Claims

To support frivolity of Ms. Lial's claims, the County points to Ms. Lial's admission that "she had no evidence and provided no evidence establishing a prima facie case for sexual harassment, discrimination, retaliation, or failure to prevent harassment or discrimination." The County faults Ms. Lial's persistence "to move forward on all her claims."

As detailed above, Ms. Lial lacked evidence to raise even factual issues as to prima facie cases for her claims to warrant summary judgment for defendants. Defendants provided ample evidence of legitimate, non-discriminatory reasons to manage Ms. Lial's dreadful job performance. Without doubt, Ms. Lial's claims were frivolous. They had no support. She neither opposed summary judgment nor presented a colorable claim. Ms. Lial demonstrated a complete unwillingness to recognize the vulnerability of her claims even after Mr. Maddox explained to Ms. Lial that her claims lacked merit and that the County would seek to recover attorney fees if she persisted to pursue them. Ms. Lial had the opportunity to assess the merits of her claims and potential consequences of continued pursuit of them. Nonetheless, she pressed forward with her claims.

### Rejected Settlement Offers

The County argues that Ms. Lial's rejection of reasonable settlement offers further demonstrates her unreasonable continued pursuit of her meritless claims.

"[N]eedless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694.

The County accuses Ms. Lial of "bad faith tactics prolonging the life of the lawsuit and forcing the County to expend thousands of dollars to defend against this lawsuit." The County points to the discovery stage as the time when Ms. Lial should have realized her claims were frivolous despite her failure to conduct discovery. The County notes Ms. Lial's outrageous $1.5 million settlement demand and failure to mediate.

"[I]f it should have been apparent to the plaintiff that a defense would make his claims groundless, the district court is justified in awarding attorney's fees in such a situation." *E.E.O.C. v. Jordan Graphics, Inc.*, 769 F.Supp. 1357, 1385 (W.D. N.C. 1991); *see Blue v. United States Department of Army,* 914 F.2d 525, 536-537 (4th Cir.1991) (plaintiffs are "not free, simply because they can meet the requirements of a prima facie case (and thus survive a motion for a directed verdict), to disregard evidence that comes to light in discovery and to continue to press their case without any reasonable belief that Plaintiffs actually were the victims of racial discrimination").

If Ms. Lial did not engage in bad faith, she came right up against bad faith. Her disingenuous excuse to forego a scheduled mediation is not lost on this Court given that she took the day after the scheduled mediation as vacation. Ms. Lial unreasonably repudiated legitimate settlement offers and made outrageous counteroffers to compel defendants to proceed to summary judgment even after Mr. Maddox warned her that the County would seek to recover attorney fees after summary judgment success. Ms. Lial's steadfast defiance of her claims' futility warrants an attorney fees award, especially given that the record reveals her ability and opportunity to assess her dubious claims.

### Attorney Fees Reasonableness

LCW bases its requested $85,855.50 attorney fees on a "lodestar" calculation of multiplying a number of reasonable hours expended by a reasonable hourly rate and as follows:

1. $75,992.50 (387.8 hours multiplied by $170-$250 hourly rates) for services though summary judgment ;
2. $1,120 (5.6 hours multiplied by Mr. Maddox' $200 hourly rate) to prepare the County's costs bill; and
3. $8,743 (50 hours multiplied by $170-$200 hourly rates) to prepare this attorney fees motion.

In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933 (1983), the U.S. Supreme Court provided guidance for assessing an attorney fees award:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the

documentation of hours is inadequate, the district court may reduce the award accordingly.

The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." . . . Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

### *Reasonable Hourly Rates*

Mr. Maddox, a senior associate, was the chief LCW attorney assigned to defend Ms. Lial's claims. Mr. Maddox has eight years experience practicing in employment law. His $200 hourly rate is reasonable.

The County also seeks recovery for $170 hourly associate billing rates and $250 hourly partner rates. Associate Maribel Hernandez ("Ms. Hernandez") assisted Mr. Maddox. The County does not identify other lawyers who defended Ms. Lial's claims. As such, besides Mr. Maddox' rate, this Court will further consider only the $170 associate rate which is reasonable for this Court's district.

Having determined the reasonableness of LCW's $170 and $200 hourly rates, this Court turns to the reasonableness of the hours expended.

### *Hours Reasonably Expended*

The County seeks to recover for 443.4 hours expended on this action. The County asks this Court to consider that:

1. Defendants prevailed on all seven of Ms. Lial's claims;
2. LCW experienced difficulty to defend Ms. Lial's claims based on the claim's nature and Ms. Lial's "uncooperative and bad faith tactics";
3. LCW devoted considerable time to organize and redact information generated since 2005;
4. Mr. Maddox devoted inordinate time to remind, instruct and educate pro se Ms. Lial;
5. LCW rates are commensurate with those charged to public entities in the San Joaquin Valley;

6. Ms. Lial made outrageous settlement offers to compel LCW to defend her claims; and

7. Less than two weeks after Ms. Lial said she would be "going public" as a result of defendants' offer to waive costs and fees, the Modesto Bee published an article to identify Mr. Woodward as the alleged harasser, to quote Ms. Lial extensively, and to portray defendants "in a bad light as a result of Plaintiff's frivolous claims."

There is no doubt that LCW was compelled to defend Ms. Lial's claims. Nonetheless, the County fails to explain the necessity to devote nearly 450 hours to do so, especially given that Ms. Lial's claims were defeated on summary judgment based in part on her own admissions. The County fails to summarize LCW's legal services and identify tasks, such as discovery, which were particularly targeted to defeat Ms. Lial's claims. The County merely provides 30 pages of billing entries from July 2009 to November 2010 and apparently expects this Court to comb through them to ascertain reasonableness. This Court is in no position to take on such task. Moreover, the County fails to explain the need for multiple attorneys to take on a pro se litigant. The use of multiple attorneys smacks of overstaffing and duplicative efforts. In addition, the ease of defendants' unopposed summary judgment contradicts the County's claims of difficulty to obtain its ultimate success.

Given the lack of clarity as to reasonable hours expended, this Court draws on its experience in handling claims of pro se litigants. Devotion of nearly 400 hours through summary judgment is unreasonable. This Court concludes that a senior associate of Mr. Maddox caliber could have handled discovery and summary judgment preparation in 150 hours. At a $200 hourly billing rate, the County is entitled to a $30,000 attorney fees award for services through summary judgment.

The County unreasonably seeks recovery for more than 50 post-summary judgment hours for tasks almost exclusively devoted to prepare this attorney fees motion. This motion is not complex. The County provides no information to explain Ms. Hernandez' devotion of more than 40 hours for this routine motion. The County offers nothing to substantiate Ms. Hernandez' qualifications. An associate could have easily prepared this attorney fees motion in eight hours to entitled the County to an additional $1,360 (8 hours multiplied by $170 hourly rate). This Court awards the County nothing for Mr. Maddox post-summary judgment tasks which appear duplicative of Ms. Hernandez' efforts or which are relatively simple to have been handled by staff at lower billing rates.

12

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court AWARDS the County a $31,360 attorney fees award.

IT IS SO ORDERED.

**Dated:   January 11, 2011**             /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE